RICHARD R. BEST
  REGIONAL DIRECTOR
LARA S. MEHRABAN
SANDEEP SATWALEKAR
PHILIP A. FORTINO
REBECCA REILLY
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-1014 (Fortino)
FortinoP@sec.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br>                              **Plaintiff,** <br><br>        **-against-** <br><br> ARON GOVIL, <br><br>                        **Defendant.** | **COMPLAINT** <br><br> **21 Civ. _____ (    )** <br><br><br> **JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendant Aron Govil ("Govil" or the "Defendant"), alleges as follows:

## SUMMARY

1.     This civil enforcement action concerns a series of frauds and other securities law

violations by the Defendant in connection with two publicly traded issuers over which he

exercised control as a controlling shareholder and officer—Cemtrex Inc. ("Cemtrex") and

Telidyne Inc. ("Telidyne").

2.      From 2016 to 2017, Govil directed Cemtrex, a purported diversified industrial and technology company, to engage in fraudulent securities offerings, ostensibly to raise funds for general corporate purposes, including product development, acquisition funding, and debt repayment, while secretly siphoning off at least $7.3 million of the proceeds for his own personal use.

3.      From 2016 to 2018, Govil also engaged in scalping Cemtrex shares, as well as trading on material non-public information.  Govil secretly paid promoters to recommend purchasing Cemtrex stock, while selling shares he owned.  Govil also purchased shares, with foreknowledge of and in advance of, announcements of corporate earnings and deals.

4.      Govil concealed his trading in Cemtrex stock by conducting the trading through accounts in the names of various nominee entities and by failing to report the trading on Forms 4 and 5.  Additionally, Govil caused Cemtrex to issue a press release falsely denying that he had sold any Cemtrex stock.

5.      In addition to his misconduct in connection with Cemtrex, Govil engaged in a separate offering fraud relating to Telidyne, a purported developer of mobile phone applications, or "apps," from 2019 to 2020.  Specifically, in connection with an offer of common stock by Telidyne, Govil who was the company's chief executive officer and only employee, made numerous misrepresentations to prospective investors concerning the company's products.  Govil falsely claimed that its money transfer app had cryptocurrency and lending capabilities when it did not have this functionality and that the company was developing an app to detect COVID-19, when in fact no such efforts were underway.

6.      Through this enforcement action, the Commission seeks to enjoin Govil from committing future violations, disgorgement of his ill-gotten gains and prejudgment interest thereon, civil penalties, an officer and director bar, and a penny stock bar.

## VIOLATIONS

7.      By virtue of the foregoing conduct and as alleged further herein, Govil has violated Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)], Sections 10(b) and 16(a) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78j(b) and 78p(a)] and Rules 10b-5 and 16a-3 thereunder [17 C.F.R. §§ 240.10b-5 and 240.16a-3].

8.      Unless Defendant is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

9.      The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)] and Exchange Act Sections 21(d) and 21A(a) [15 U.S.C. §§ 78u(d) and 78u-1(a)].

10.      The Commission seeks a final judgment: (a) permanently enjoining Defendant from violating the federal securities laws and rules this Complaint alleges he has violated; (b) ordering Defendant to disgorge all ill-gotten gains he received as a result of the violations alleged here and to pay prejudgment interest thereon; (c) ordering Defendant to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; (d) permanently prohibiting Govil from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12

[15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)]; (e) permanently prohibiting Govil from participating in any offering of a penny stock, pursuant to Securities Act Section 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and (f) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].

12.     Defendant, directly and indirectly, have made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

13.     Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa]. Defendant may be found in, is an inhabitant of, or transacts business in the Southern District of New York, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including the offer and sale of securities through broker-dealers located within the District.

## DEFENDANT[1]

14.     **Govil** was, the founder of and, at all relevant times, the controlling shareholder of Cemtrex.  At various times, as set forth below, Govil also served as the chairman, chief financial officer, and executive director of Cemtrex.  At all relevant times, Govil was the controlling

---

[1]     The Commission and Govil entered into an agreement before the filing of this complaint to toll the statute of limitations applicable to the Commission's claims from January 8, 2021 to July 8, 2021.

shareholder of Telidyne and served as its chairman and chief executive officer.

## OTHER RELEVANT ENTITIES

15.     **Cemtrex** is a purported diversified industrial and technology company headquartered in Long Island City, New York.  At all relevant times, its common shares were listed on the NASDAQ under the symbol "CETX."

16.     **Telidyne** is a purported developer of applications for mobile phones headquartered in New York, New York.  At all relevant times, its shares traded over the counter under the symbol "TLDN."

17.     **Govil Nominee Entities** were four companies, Ducon Technologies Inc., First Commercial Asset Management Inc., and Savivar Asset Holdings Inc., that Govil owned and controlled.  Govil used each of these entities for the purpose of conducting transactions discussed herein, including purchasing and selling Cemtrex common stock and transferring funds from Cemtrex to himself.

## FACTS

### I.     The Cemtrex Frauds

18.     Govil founded Cemtrex in 1998.

19.     At all relevant times, Govil held preferred shares of Cemtrex stock that gave him voting control over the company.

20.     At various times, Govil served as the chairman, chief executive officer, chief financial officer, and executive director of Cemtrex.

21.     Regardless of his title or position, Govil at all times exercised control over and directed Cemtrex's operations, including its securities offerings and press releases.

### A.      Misappropriation of Cemtrex Offering Proceeds

22.     On two occasions in April 2016 and November 2017, Govil caused Cemtrex to sell a total of approximately $2.5 million in Cemtrex securities to an investor, which was wired to a Cemtrex bank account.

23.     Separately, in or about December 2016, Govil caused Cemtrex to commence a registered subscription rights offering, which gave the purchaser a unit consisting of one share of Series 1 Preferred Stock and two Series 1 Warrants for a subscription price of $10 per unit.  The company sought to sell up to 1,500,000 units for proceeds of up to $15 million.

24.     At the conclusion of the subscription rights offering, Cemtrex had raised approximately $13,561,870.  A portion of the offering proceeds were used to pay the offering expenses, with the balance of approximately $11,750,000 deposited into one of Cemtrex's bank accounts.

25.     In connection with each of these two offerings, Govil, through Cemtrex, represented to investors that the offering proceeds would be used for various corporate purposes, including new product development and acquisitions, as well as repaying outstanding debt and other general corporate purposes.

26.     Once the offering proceeds were deposited in Cemtrex's bank accounts, and undisclosed to investors, Govil knowingly misappropriated at least $7,300,000 of offering proceeds from the company.

27.     In his capacity as an executive at Cemtrex, Govil had access to Cemtrex's bank accounts and used this access to make at least 21 transfers of offering proceeds from Cemtrex's bank accounts to accounts in the name of a Govil Nominee Entity.

28.     After transferring the funds, Govil used them to pay for personal expenses and to

finance his other business ventures unrelated to Cemtrex.

**B.     Fraudulent Trading in Cemtrex Stock**

29.     From at least September 2016 until at least 2019, Govil repeatedly paid others to promote Cemtrex stock by issuing newsletters and analyst reports that recommended retail investors purchase the stock.

30.     In order to conceal his involvement with the promotions, Govil knowingly disguised the source of the payments for the promotions.

31.     For example, in September 2016, Govil paid a well-known stock promoter to recommend Cemtrex stock by using the account of a defunct construction company he owned. The promoter then disclosed receiving a fee from that company, not Govil or Cemtrex.

32.     In January and February 2019, Govil paid a different promoter to recommend Cemtrex stock by transferring approximately 200,000 shares of Cemtrex common stock from a Govil Nominee Entity as a charitable contribution.  The promoter later sold the stock, realizing profits of more than $70,000.

33.     Contemporaneously with these paid-for promotions, Govil secretly sold Cemtrex common stock, which he held indirectly through the Govil Nominee Entities.

34.     In many cases, Govil knowingly traded while in possession of material nonpublic information about Cemtrex's business.

35.     For example, on February 13, 2018, a day before a Cemtrex earnings release was to be issued touting "strong topline growth," Govil, with knowledge of the release, purchased Cemtrex common stock.  When the earnings release was publicly disclosed, the price increased and trading volume spiked, and Govil subsequently sold the shares.

36.     Govil also traded ahead of Cemtrex's March 26, 2018 announcement that it had

acquired a stake in a video security camera company.  Specifically, between March 21 and March 23, 2018, with knowledge of the transaction, Govil purchased 1,305 shares of Cemtrex at an average price per share of $2.92 through a total of seven transactions.  On March 26, 2018, the same day as the press release announcing the acquisition, Govil, in the same account, sold 6,000 shares of Cemtrex in a series of five transactions at an average price per share of $3.15.

37.     In total, Govil obtained proceeds of more than $360,000 in connection with his illegal trading.

38.     During this period, Govil, by virtue of his positions with the company, was required to disclose his transactions in Cemtrex stock by filing prescribed forms called Forms 4 and 5 with the Commission pursuant to Exchange Act 16(a) and Rule 16a-3 thereunder.  Govil did not make any of the required disclosures for his stock sales.

39.     In or about February 22, 2017, an analyst blogger covering Cemtrex issued a report questioning whether Govil had paid to promote Cemtrex stock and whether Govil had sold stock during the promotions.

40.     On the same day, in order to further conceal his ongoing fraud, Govil knowingly, or with reckless disregard, caused Cemtrex to issue a press release falsely denying these allegations.  The press release falsely stated,

>           As is easily confirmed by a review of Cemtrex's proxy filings with
>           the SEC, Aron Govil … [has] not sold shares of Cemtrex in several
>           years. In addition, … Cemtrex Founder Aron Govil [is] committed
>           to purchasing additional shares of Cemtrex in the open market and
>           will file the appropriate Form 4's with the SEC accordingly in the
>           days to come.

41.     This statement was false because Govil had in fact sold shares of Cemtrex within the last "several years."  In fact, Govil had sold stock through the Govil Nominee Entities mere days before the press release.

42.     Subsequent to the press release, including on the same day as the press release, Govil continued to purchase and sell Cemtrex shares through the Govil Nominee Entities without filing the appropriate Commission disclosure forms.

## II.  The Fraudulent Telidyne Offering

43.     Govil founded Telidyne in 2019.

44.     Govil promoted Telidyne as a developer of applications for mobile phones.

45.     Telidyne had no employees other than Govil.  Govil outsourced all of the application development work of the company.  For some of the programming work, Govil enlisted software engineers working for Cemtrex.

46.     On November 5, 2019, Govil filed a registration statement with the Commission on behalf of Telidyne to register the sale of up to 3,000,000 shares of Telidyne common stock at a fixed price of $3.00 per share in a direct offering.  The registration became effective on November 26, 2019.

47.     At the time the registration became effective, Govil knew that Telidyne's only product was a payments app known as the "Teli App."  Ultimately, Telidyne made the app available for download at two mobile app stores.  Telidyne also featured links to the app on its website.

48.     Govil reviewed, approved, and knowingly, or with reckless disregard, caused the dissemination of various statements concerning the Teli App that were not true.

49.     Specifically, Govil reviewed and approved false statements on the app store

listings indicating that the Teli App enabled users to "[s]ecurely manage your crypto" and "easily buy and sell crypto."  In addition, the listings stated that the app could be used to "[s]ecurely loan and borrow."  In support of each claim, the app store listings included screenshots, purporting to show this functionality.

50.    Similarly, the Telidyne website falsely stated that the Teli App "harnesses cutting edge technology to provide users with advanced, private and secure crypto-wallet transactions" and gave users "the ability to negotiate borrowing and loaning of local currency with the use of cryptocurrencies interest rates."

51.    Although prototypes of the Teli App had the advertised functionality, the version of the app that Telidyne made available for download did not have the advertised functionality.

52.    On April 6, 2020, Govil knowingly, or with reckless disregard, directed Telidyne to issue a false press release entitled "Telidyne Announces New Mobile App for Detection of Coronavirus and Other Infectious Diseases."  The press release stated that the company had "started work on developing a new mobile app to be available globally on both iPhone and Android platforms that would allow easy detection of coronavirus (COVID-19) or other similar infectious diseases among global population."  It further projected that it expected "to have a Beta version ready in 2 to 3 months."

53.    In fact, at the time of the press release, Telidyne had not started to develop any such app and had no prospect of having a version of the app available in the stated timeframe.

54.    On February 14, 2020 and April 14, 2020, an investor ("Investor A") purchased a total of $300,000 in shares of Telidyne common stock.

55.    In connection with the sales, Govil did not inform Investor A that the publicly available information about the company's products was inaccurate.

56.     In addition, Govil knowingly or recklessly made additional false representations to Investor A.  Govil represented that Telidyne common stock, which was being offered for $3 per share, recently traded for $200.  Govil failed to disclose, however, that this price was heavily influenced by his own trading in the security, including matched trades between accounts he controlled, which accounted for the vast majority of the trading volume.

57.     Govil knowingly or recklessly transferred a portion of the proceeds from this sale of Telidyne stock to Investor A to his personal accounts and used the rest to pay expenses associated with the fraudulent offering.

**FIRST CLAIM FOR RELIEF**
**Violations of Securities Act Section 17(a) and Exchange Act Section 10(b) and Rule 10b-5**
**Thereunder**

58.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 28.

59.     In connection with the securities offerings by Cemtrex described in Section I.A, above, Govil, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly have employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently have obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

60.     In connection with the securities offerings by Cemtrex described in Section I.A,

Govil, directly or indirectly, singly or in concert, in connection with the purchase or sale of

securities and by the use of means or instrumentalities of interstate commerce, or the mails, or

the facilities of a national securities exchange, knowingly or recklessly have (1) employed one or

more devices, schemes, or artifices to defraud, (2) made one or more untrue statements of a

material fact or omitted to state one or more material facts necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading,

and/or (3) engaged in one or more acts, practices, or courses of business which operated or

would operate as a fraud or deceit upon other persons.

61.     By reason of the foregoing, Defendant, directly or indirectly, singly or in concert,

have violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C.

§ 77q(a)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17

C.F.R. § 240.10b-5].

**SECOND CLAIM FOR RELIEF**
**Violations of Securities Act Section 17(a) and Exchange Act Section 10(b) and Rule 10b-5**
**Thereunder**

1.     The Commission re-alleges and incorporates by reference here the allegations in

paragraphs 1 through 21, 29 through 42.

2.     In connection with his purchases and sales of Cemtrex common stock described in

Section I.B, above, Govil, directly or indirectly, singly or in concert, in the offer or sale of

securities and by the use of the means or instruments of transportation or communication in

interstate commerce or the mails, (1) knowingly or recklessly have employed one or more

devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently have obtained

money or property by means of one or more untrue statements of a material fact or omissions of

a material fact necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

3.      In connection with his purchases and sales of Cemtrex common stock described in Section I.B, above, Govil, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly have (1) employed one or more devices, schemes, or artifices to defraud, (2) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

4.      By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**THIRD CLAIM FOR RELIEF**
**Violations of Securities Act Section 17(a) and Exchange Act Section 10(b) and Rule 10b-5**
**Thereunder**

1.      The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 17 and 43 through 57.

2.      In connection with Telidyne's offering of common stock described in Section II, above, Govil, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce

or the mails, (1) knowingly or recklessly have employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently have obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently have engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

3.      In connection with Telidyne's offering of common stock common stock described in Section II, above, Govil, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly have (1) employed one or more devices, schemes, or artifices to defraud, (2) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

4.      By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## FOURTH CLAIM FOR RELIEF
### Violations of Exchange Act Section 16(a) and Rule 16a-3 Thereunder

5.      The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 42.

6.      Govil, as the direct or indirect beneficial owner of more than ten percent of a class of equity securities (other than an exempted security) which was registered pursuant to Exchange Act Section 12 [15 U.S.C. § 78l] and/or as an officer or director of an issuer of such securities, failed to timely and accurately file Forms 4 and Forms 5 with the Commission containing the information required therein.

7.      By reason of the foregoing, Govil violated and, unless enjoined, will again violate Exchange Act Section 16(a) [15 U.S.C. § 78p(a)] and Rule 16a-3 [17 C.F.R. § 240.16a-3] thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

## I.

Permanently enjoining Govil and its agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Exchange Act Section 16(a) [15 U.S.C. § 78p(a)] and Rule 16a-3 [17 C.F.R. § 240.16a-3] thereunder;

## II.

Ordering Defendant to disgorge all ill-gotten gains they received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations;

## III.

Ordering Defendant to pay civil monetary penalties under Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

**IV.**

Permanently prohibiting Govil from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)];

**V.**

Permanently prohibiting Govil from participating in any offering of a penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock, under Exchange Act Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and

**VI.**

Granting any other and further relief this Court may deem just and proper.

Dated: New York, New York
      July 19, 2021

                 /s/ Richard R. Best
                RICHARD R. BEST
                 REGIONAL DIRECTOR
                Lara S. Mehraban
                Sandeep Satwalekar
                Philip A. Fortino
                Rebecca Reilly
                Attorneys for Plaintiff
                SECURITIES AND EXCHANGE COMMISSION
                New York Regional Office
                Brookfield Place
                200 Vesey Street, Suite 400
                New York, New York 10281-1022
                (212) 336-1014 (Fortino)
                FortinoP@sec.gov