# EXHIBIT 1

# 22-1658-cv

## United States Court of Appeals

*for the*

## Second Circuit

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

– v. –

ARON GOVIL,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANT-APPELLANT

MATTHEW AARON FORD
ADAM C. FORD
STEPHEN R. HALPIN III
FORD O'BRIEN LANDY LLP
*Attorneys for Defendant-Appellant*
275 Madison Avenue, 24th Floor
New York, New York 10016
(212) 858-0040

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................ i

**TABLE OF AUTHORITIES** ........................................................................................ ii

**SUMMARY OF ARGUMENT** ...................................................................................... 1

**ARGUMENT** ..................................................................................................................... 2

I.     The district court's disgorgement award cannot be sustained under § 78u(d)(5). ................................................................................................................... 2

    A.   The SEC's brief confirms it sought disgorgement under § 78u(d)(5) and that the district court attempted to award disgorgement under that statutory provision. ............................................................................. 4

    B.   The Supreme Court's decision in *Liu* made clear that disgorgement under § 78u(d)(5) must be "awarded for victims," but the district court did not find investors were harmed and the SEC has not identified any such investors. ............................................................... 5

II.    The district court's disgorgement award cannot be sustained under § 78u(d)(3) & (d)(7). ................................................................................................ 8

    A.   Any award of disgorgement under § 78u(d)(3) & (d)(7) must account for the Cemtrex shares Mr. Govil relinquished to the Company. ........ 9

    B.   This Court should not decide in the first instance whether disgorgement under § 78u(d)(3) & (d)(7) is appropriate given the numerous unsettled factual questions the district court did not address. .................................................................................................... 11

**CONCLUSION** ............................................................................................................... 14

**CERTIFICATE OF COMPLIANCE** ........................................................................ 15

i

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Kokesh v. SEC*,
    137 S. Ct. 1635 (2017)..................................................................................1, 2

*Liu v. SEC*,
    140 S. Ct. 1936 (2020)............................................................................... *passim*

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
    139 S. Ct. 1881 (2019)..........................................................................................3

*SEC v. Cavanagh*,
    155 F.3d 129 (2d Cir. 1998) ...............................................................................10

*SEC v. Fife*,
    No. 1:20-cv-05227 (N.D. Ill. Sept. 3, 2020).........................................................7

*SEC v. Fowler*,
    440 F. Supp. 3d 284 (S.D.N.Y. 2020) .................................................................8

*SEC v. Lemelson*,
    596 F. Supp. 3d 227 (D. Mass. 2022), *aff'd on other grounds*,
    57 F.4th 17 (1st Cir. 2023) ................................................................. 3, 8, 9

*SEC v. Liu*,
    No. SACV1600974CJCAGRX, 2021 WL 2374248 (C.D. Cal. June
    7, 2021), *aff'd*, No. 21-56090, 2022 WL 3645063
    (9th Cir. Aug. 24, 2022) ......................................................................................9

*SEC v. Slowinksi*,
    No. 1:19-CV-03552, 2020 WL 7027639 (N.D. Ill. Nov. 29, 2020)..............10

*SEC v. Universal Express, Inc.*,
    646 F. Supp. 2d 552 (S.D.N.Y. 2009), *aff'd*, 438 F. App'x 23
    (2d Cir. 2011).....................................................................................................10

*Springsteen-Abbott v. SEC*,
    989 F.3d 4 (D.C. Cir. 2021)...............................................................................10

*Tilghman v. Proctor*,
    125 U.S. 136 (1888)........................................................................................6, 9

**Statutes & Other Authorities:**

15 U.S.C. § 78u(d)(3) ............................................................................................... *passim*

15 U.S.C. § 78u(d)(5) ............................................................................................... *passim*

15 U.S.C. § 78u(d)(7) ............................................................................................... *passim*

# SUMMARY OF ARGUMENT

Should Mr. Govil have to turn over almost $6 million for distribution to investors in Cemtrex who have not been identified, have not brought private action against Mr. Govil or the Company, and may not have even been harmed by Mr. Govil's alleged misconduct?[1] Or, even if no investors were harmed, should Mr. Govil still have to give up almost $6 million to the U.S. government for allegedly misappropriating funds from Cemtrex when Mr. Govil has already settled such allegations with the Company and as part of that agreement relinquished shares in the Company valued by Mr. Govil and Cemtrex to be worth millions of dollars?

The SEC discerns no difference between these two questions, ignoring the evolving landscape surrounding district courts' authority to award disgorgement in SEC enforcement actions after *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), *Liu v. SEC*, 140 S. Ct. 1936 (2020), and the 2021 Amendments. But these questions are not the same, and the district court's Opinion and Final Judgment fail to answer either in satisfactory fashion. Indeed, the SEC concedes the Final Judgment cannot simply be affirmed and asks this Court for a limited remand on that basis.

Mr. Govil agrees that a remand is warranted, but a limited remand is not sufficient. The district court must go back to the drawing board, clearly indicate the

---

1. Defined terms as in Mr. Govil's opening brief.

authority under which it is considering additional disgorgement against Mr. Govil, and perform the analysis required under that specific source of authority.

## ARGUMENT

### I. The district court's disgorgement award cannot be sustained under § 78u(d)(5).

The SEC conflates the separate statutory bases under which Congress has granted district courts authority to order disgorgement in SEC enforcement actions. The SEC maintains here that the district court's "disgorgement order is appropriate equitable relief pursuant to both § 78u(d)(5) and § 78u(d)(7) because its purpose is to deprive Govil of his unjust enrichment," SEC Br. 14, and "the purpose of disgorgement is always to 'deprive[] wrongdoers of their net profits from unlawful activity,'" *id.* at 17 (quoting *Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020)).[2]

But the SEC miscites a passage from *Liu* that discusses certain equitable principles generally—not disgorgement under § 78u(d)(5) specifically (or under § 78u(d)(7), which was enacted after *Liu*). *See id.* (summarizing "works on equity

---

2. To the extent the SEC contends this Court may affirm the disgorgement award based on some purported inherent equitable authority not tied to § 78u(d)(5) or (d)(7), the Court should decline the invitation. In *Kokesh*, a unanimous Supreme Court called into question "whether courts possess authority to order disgorgement in SEC enforcement proceedings" or "whether courts have properly applied disgorgement principles in this context." *See* 581 U.S. 455, 461 (2017). And in *Liu*, decided before the enactment of § 78u(d)(7), the Court focused squarely on disgorgement as authorized under the statutory provision at issue—§ 78u(d)(5).

2

jurisprudence"). The Supreme Court makes clear later in the decision that disgorgement under § 78u(d)(5) "must do more than simply benefit the public at large by virtue of depriving a wrongdoer of ill-gotten gains. To hold otherwise would render meaningless the latter part of § 78u(d)(5)." *Id.* at 1948; *see also SEC v. Lemelson*, 596 F. Supp. 3d 227, 237 (D. Mass. 2022) ("The [*Liu*] Court rejected the Government's position that the 'primary function of depriving wrongdoers of profits is to deny them the fruits of their ill-gotten gains, not to return the funds to victims as a kind of restitution.'" (citation omitted)), *aff'd on other grounds*, 57 F.4th 17 (1st Cir. 2023).

Put differently, and as Mr. Govil observed previously, "the phrase 'appropriate or necessary for the benefit of investors' [in § 78u(d)(5)] must mean something more than depriving a wrongdoer of his net profits alone, else the Court would violate the 'cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute.'" *Liu*, 140 S. Ct. at 1948 (quoting *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019)); *see id.* at 1940 ("The Court holds today that a disgorgement award that does not exceed a wrongdoer's net profits *and is awarded for victims* is equitable relief permissible under § 78u(d)(5)." (emphasis added)).

The same "cardinal principle of interpretation" counsels that, in enacting § 78u(d)(5) and § 78u(d)(7), Congress has not simply authorized the exact same

3

relief twice in different provisions of the same statutory scheme, contrary to the SEC's suggestion. Disgorgement under § 78u(d)(5) must be "awarded for victims" and must be "appropriate or necessary for the benefit of investors."

### A. The SEC's brief confirms it sought disgorgement under § 78u(d)(5) and that the district court attempted to award disgorgement under that statutory provision.

Notwithstanding the SEC's contentions elsewhere that the purpose of disgorgement is solely to deprive a wrongdoer of his ill-gotten gains, the SEC repeats its earlier intention, recognized by the district court, "to distribute any funds collected to investors." SEC Br. 14; *see also id.* at 6, 11. And the SEC even goes so far as to argue affirmatively that the district court's Final Judgment includes an "erroneous instruction to the Commission to send any disgorged funds to the Treasury," observing that "[t]he final judgment contradicts the district court's opinion, in which the court indicated that disgorged funds should be distributed to injured investors." *Id.* at 13–14. The SEC asks for a remand on this basis, conceding that the Final Judgment cannot simply be affirmed. *See id.* at 28–31.

The SEC's position makes sense only if it has sought—and the district court attempted to award—disgorgement under § 78u(d)(5), as interpreted by *Liu*. Indeed, the *Liu* Court observed that § 78u(d)(5) "generally requires the SEC to return a defendant's gains to wronged investors for their benefit," and "[t]he statute

4

provides limited guidance as to whether the practice of depositing defendant's gains with the Treasury satisfies the statute's command that any remedy be 'appropriate or necessary for the benefit of investors.'" *Liu*, 140 S. Ct. at 1947–48; *id.* at 1946 (observing that instructing disgorged monies "to be deposited in Treasury funds instead of disbursing them to victims . . . . is in considerable tension with equity practices").

This Court should view the district court's disgorgement award through the prism of § 78u(d)(5), as interpreted by *Liu*. As explained in Part II, *infra*, the district court did not consider § 78u(d)(7), the SEC's brief confirms the factual record is not adequately developed to allow this Court to apply the statute in the first instance, and thus the statute does not provide a basis on which this Court should affirm the district court's Final Judgment.

> **B.     The Supreme Court's decision in *Liu* made clear that disgorgement under § 78u(d)(5) must be "awarded for victims," but the district court did not find investors were harmed and the SEC has not identified any such investors.**

Section 78u(d)(5) requires that relief be "appropriate or necessary for the benefit of investors," and the Court in *Liu* further clarified that the relief must be "awarded for victims." Here, the district court expressly noted that "the investors may not have been financially harmed." SPA24. In other words, the lower court's ruling does not satisfy the plain language of the statute.

5

In response, the SEC embraces the sweeping position—without citation—that "[t]he investors are victims regardless of whether any particular investor suffered financial losses on account of his or her investment." SEC Br. 18. This position reads out of the statute the requirement that the relief be "appropriate or necessary" for investors, suggesting instead that disgorgement under § 78u(d)(5) need only be "for the benefit of investors" whenever there is an underlying alleged violation of the securities laws, and that (1) the SEC does not have to identify specific investors until some later indefinite time and (2) never has to show they were "harmed." Such relief would effectively transform disgorgement under § 78u(d)(5) into a penalty and run afoul of the "equitable principle that the wrongdoer should not be punished by 'pay[ing] more than a fair compensation to the person wronged.'" *Liu*, 140 S. Ct. at 1943 (quoting *Tilghman v. Proctor*, 125 U.S. 136, 145–46 (1888)).

Here, the SEC represented to the district court on January 28, 2022, that the Cemtrex investors who participated in the offerings in question "appear to be readily identifiable from the company and transfer agent records, as well as other records." A58. But the SEC has undertaken no efforts in the intervening thirteen months to identify such investors. Instead, the SEC contends Mr. Govil should have to fork over almost $6 million—in addition to the other amounts owed under the district court's judgments—before the SEC has even identified to whom the

6

money will be distributed, whether any such persons or entities are "victims," and whether disgorgement is otherwise "appropriate or necessary" for such investors.[3]

The SEC's approach defers the essential question whether the ordered disgorgement is "awarded for victims" or "appropriate or necessary for the benefit of investors," removing it from the hands of the judiciary and placing it within the hands of an executive agency, even though § 78u(d)(5) contemplates relief that the SEC "may *seek*" and "any Federal court may *grant*." *See* SPA21 ("The SEC has represented that it is feasible to identify the victims of the fraud. However, if it [i.e., the SEC] later determines that distribution to investors is infeasible, it must update the Court . . . ."). In instances like those here, where the SEC maintains the investors in question are "readily identifiable," the SEC should be required to identify them when seeking disgorgement so the district court can determine whether millions of dollars in disgorgement is "appropriate or necessary."

---

3. Mr. Govil suspects the SEC has not already expressly identified the investors in question because at least one of the main investors is in active litigation with the SEC and the SEC does not wish to lock itself into the position of sending funds disgorged from Mr. Govil to that investor. *See* Compl. ¶¶ 2–5, 12, *SEC v. Fife*, No. 1:20-cv-05227 (N.D. Ill. Sept. 3, 2020) (alleging that defendant John Fife is "a recidivist violator of the federal securities laws," that he has violated "the dealer registration requirements" of such laws, and that he "solely owns and controls [defendant] CVP [Chicago Venture Partners, LP]"), ECF No. 1; A248–59 (email correspondence between Cemtrex and CVP, including Fife, regarding CVP's participation in the offerings at issue here).

7

Accordingly, this Court should vacate the district court's Final Judgment and remand with instructions for the SEC to identify the investors to whom it seeks to distribute disgorged funds and for the district court to determine in the first instance whether such investors have been "harmed" and thus are entitled to disgorgement from Mr. Govil if "appropriate or necessary."

## II. The district court's disgorgement award cannot be sustained under § 78u(d)(3) & (d)(7).

As the SEC acknowledges, "'courts should deduct any money that a defendant returns or has returned to her or his victims' because defendants 'are only required to give back the proceeds of their securities fraud once.'" *See* SEC Br. 25 (quoting *SEC v. Fowler*, 440 F. Supp. 3d 284, 296 (S.D.N.Y. 2020)). That is precisely what Mr. Govil has already done here by returning value to the Company from which he allegedly misappropriated funds, not dissipating assets, as the SEC maintains.

If on remand the SEC seeks disgorgement under § 78u(d)(3) & (d)(7) instead of § 78u(d)(5), that would only be because the SEC has realized that the Company—rather than specific investors, who have commenced no private action against the Company or Mr. Govil—was the real victim of Mr. Govil's alleged misconduct. *See Lemelson*, 596 F. Supp. 3d at 238 (denying disgorgement under § 78u(d)(5) and *Liu* where "the investing public had access to information about at

8

least two of the statements . . . and therefore could take remedial action").[4] "After all," as the district court reasoned, "if Cemtrex is the victim, then the Settlement Agreement would have properly 'pa[id] . . . a fair compensation to the person wronged,' and requiring additional disgorgement would then serve as an improper punitive measure." SPA20 (quoting *Tilghman*, 125 U.S. at 146).

### A. Any award of disgorgement under § 78u(d)(3) & (d)(7) must account for the Cemtrex shares Mr. Govil relinquished to the Company.

The district court correctly rejected "the SEC's characterization that the Settlement Agreement was strictly 'personal in nature.'" SPA 19–20. And the cases the SEC cites in support of its argument that Mr. Govil's relinquishment of shares should not be considered at all are easily distinguishable. *See* SEC Br. 24–27. Here, unlike in the SEC's cases, Mr. Govil has returned value directly to the Company from which he allegedly misappropriated funds and the Company itself has never been implicated in the alleged misconduct.

By contrast, in *SEC v. Liu*, No. SACV1600974CJCAGRX, 2021 WL 2374248, at *9 (C.D. Cal. June 7, 2021), *aff'd*, No. 21-56090, 2022 WL 3645063 (9th Cir. Aug. 24, 2022), the court rejected defendants' effort to deduct from the disgorgement award "monies that they paid to independent companies to perpetrate

---

4. Notably, the SEC did not appeal the denial of disgorgement in *Lemelson*. *See SEC v. Lemelson*, 57 F.4th 17, 23 n.5 (1st Cir. 2023).

9

their fraud." *See also SEC v. Slowinksi*, No. 1:19-CV-03552, 2020 WL 7027639, at *4 (N.D. Ill. Nov. 29, 2020) (declining to reduce disgorgement by amount paid to other companies that "were intimately involved in the scheme").

In *SEC v. Universal Express, Inc.*, 646 F. Supp. 2d 552, 564–65 (S.D.N.Y. 2009), *aff'd*, 438 F. App'x 23 (2d Cir. 2011) (unpublished) (summary order), the court declined to offset the disgorgement amount against one defendant by the monies he had remitted to the company at issue, but that was because "the precise purpose" of the remitted funds was "unclear" and the company itself was alleged to have been a "coconspirator" in the fraudulent scheme. In *Springsteen-Abbott v. SEC*, 989 F.3d 4, 7–9 (D.C. Cir. 2021), the court declined to reduce the disgorgement amount by "continuing education expenses for [the defendant's] employees" that were paid out of "investor funds" rather than out of defendant's business. Finally, in *SEC v. Cavanagh*, 155 F.3d 129, 136–37 (2d Cir. 1998), one defendant gifted shares to another defendant who then gifted the shares to his wife and subsequently caused the shares to be sold, all without his wife's knowledge; the narrow question was whether the district court "was within its discretion in granting the preliminary injunction freezing the proceeds from the stocks" that had been held in the wife's bank account.

Disgorgement under § 78u(d)(7) does not require an award specifically "for the benefit of investors," but instead that a defendant is deprived of any unjust

10

enrichment. Mr. Govil has returned value directly to Cemtrex, the Company from which he allegedly misappropriated funds. It would be inconsistent with principles of unjust enrichment to deny him any credit whatsoever for those shares.

> **B. This Court should not decide in the first instance whether disgorgement under § 78u(d)(3) & (d)(7) is appropriate given the numerous unsettled factual questions the district court did not address.**

In various parts of the Complaint, the SEC cites Section 21(d)(3) (§ 78u(d)(3)) in connection with its requests for civil monetary penalties, which is unsurprising because before the 2021 Amendments—enacted only six months before the Complaint was filed—that statutory provision was titled "Money penalties in civil actions" and provided the SEC with authority to seek such penalties.[5] But the Complaint does not explicitly cite § 78u(d)(3) in connection with the SEC's requests for disgorgement, and nowhere does the Complaint cite § 78u(d)(7) for that purpose.

The SEC's passing references to Section 21(d)(7) (§ 78u(d)(7)) in a handful of instances in the district court briefing do not demonstrate that the lower court considered and analyzed that separate statutory provision in rendering its decision. Indeed, the district court's Opinion discusses *Liu* at length, SPA2–3, and fails to

---

5. The provision is now titled: "Civil money penalties and authority to seek disgorgement."

11

cite or discuss § 78u(d)(7) or the 2021 Amendments enacted by the NDAA. Section 78u(d)(7) does not require disgorged funds to be "appropriate or necessary for the benefit of investors," as in § 78u(d)(5), but it is tied explicitly to the concept of "unjust enrichment" through § 78u(d)(3), unlike § 78u(d)(5). Such differences necessitate a different analysis.

More specifically, if the district court on remand concludes disgorgement is appropriate under § 78u(d)(3) & (d)(7), that court must assess in the first instance the value of the shares Mr. Govil relinquished, a question it previously avoided, *see* SPA 21 n.1, effectively assigning the shares no value in its analysis. Fundamentally, the SEC appears to agree, conceding that "[e]ven if this Court were to hold that the value of the shares must be deducted from disgorgement, it should remand for the district court to determine that value in the first instance." SEC Br. 27. The SEC's incomplete observations about the current factual record further prove the point.

For example, the SEC contends that the independent expert Mr. Govil hired to assess the value of his shares "repudiated the valuation," but fails to mention that the expert subsequently performed a revised valuation that reached substantially the same result as his prior work. *See* A312–15.[6] And the SEC also

---

6. The expert's original valuation dated February 22, 2021, valued Mr. Govil's 1,000,000 Series A Preferred Shares at $4,468,188 and his 50,000 Series C Preferred Stock at $223,409. *See* A307–09. After being deposed by the SEC,

12

omits that, in Cemtrex's audited Form 10-K for the fiscal year ended September 30, 2021, the Company "recognized" a "gain of $3,674,165" regarding the shares Mr. Govil "surrendered" as part of the Settlement Agreement. *See* A331, A334. This sizable gain—along with other aspects of the Settlement Agreement the SEC simply ignores, *see* Govil Br. 47–51—undermines the SEC's position that the Settlement Agreement did not constitute a relinquishment of Mr. Govil's alleged unjust enrichment.

Additionally, while the SEC understates the value of the relinquished shares to the Company, it overstates their value to Mr. Govil's son, who—prior to the relinquishment of Mr. Govil's shares—served as Chief Executive Officer of Cemtrex and already had significant voting control over the Company based on his share ownership. Before the Settlement Agreement, Mr. Govil's son could already independently exercise control over Company matters if for whatever reason Mr. Govil did not vote his shares. *See* A149. These and other factual questions have not been adequately developed in the district court and thus preclude affirmance of the Final Judgment under § 78u(d)(3) & (d)(7).

---

the expert performed a revised valuation in which he valued Mr. Govil's 1,000,000 Series A Preferred Shares at $4,165,668 and his 50,000 Series C Preferred Shares at $208,500. *See* A312–14. (At the time of the Settlement Agreement, Cemtrex's Series 1 Preferred Shares (CETXP) traded publicly at $2.13 per share. A273 n.4.)

13

## CONCLUSION

For the foregoing reasons, Mr. Govil respectfully requests that the Court vacate the district court's decision awarding disgorgement on Count I of the Complaint and remand with instructions.

Dated: March 6, 2023                                    Respectfully submitted,

                                                     */s/ Matthew Aaron Ford*
                                                   Matthew Aaron Ford
                                                   Adam C. Ford
                                                   Stephen R. Halpin III
                                                   FORD O'BRIEN LANDY LLP
                                                   275 Madison Avenue, 24th Floor
                                                   New York, NY 10016
                                                   Tel.: (212) 858-0040 (main)
                                                   Fax: (212) 256-1047
                                                   mford@fordobrien.com
                                                   aford@fordobrien.com
                                                   shalpin@fordobrien.com

                                                   *Counsel for Defendant–Appellant Aron Govil*

14

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Local Rule 32.1(a)(4)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,226 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word, Version 16.66, in 14 point Times New Roman font.

Dated: March 6, 2023

                                             */s/ Matthew Aaron Ford*
Matthew Aaron Ford
FORD O'BRIEN LANDY LLP
275 Madison Avenue, 24th Floor
New York, NY 10016
Tel.: (212) 858-0040 (main)
Fax: (212) 256-1047
mford@fordobrien.com

15